The clerk will call the next case. 3-15-0090. People of the State of Illinois Appellee by Laura DeMichael Byland v. William Kibbons Appellant by Neal Adams. Mr. Adams, before you proceed, I just want to advise everyone that, as you can see, Justice McDade is not present here today. She is not feeling well, but she has prepared, and she is participating in the decision, and she'll listen to the oral arguments, so she is definitely part of the case, and with that, you may proceed. Thank you for that explanation, Your Honor. Good afternoon, Justices. For the record, Neal Adams on behalf of Defendant Appellant William Kibbons. May it please the Court, Counsel, I know you are familiar with the facts of the case from the briefs, so I will not dwell on them. I propose to move right to the issues, the legal issues presented. The first issue is our contention that the trial court erred in refusing to allow the defendant to withdraw his plea of guilty due to the prosecutor's per se conflict of interest. The determination of per se conflict of interest is subject to de novo review, so there is no deference to the trial court's decision. Going back to 1914 in this state, it's well established that it's not just actual conflict, but the appearance of conflict that the law abhors. Well, it may abhor it, but the appearance doesn't create a per se conflict. No, no, that is correct, Judge, but it's abhorred by the courts, and it's not necessary that a prosecutor betray or attempted to betray confidences. It's enough that he leaves himself open to that allegation. This court decided people versus court meet, and it was clear from that decision that a prosecutor cannot act in the same case as prosecutor in which he previously served as defense attorney. In my brief, I suggested that this issue of whether a prosecutor can have a per se conflict of interest due to previously representing the defendant is a case of first impression. The state countered in their brief with citing the case of people versus trail. That is a fourth district case, a five-page opinion. Approximately two short paragraphs are devoted to this issue of conflict of interest. I would add, without any substantive analysis or exposition. I believe trail is inconsistent with the state's jurisprudence and this district's jurisprudence on this issue. Going back to people versus Gerald in 1914, going to Courtney. Also, this trail decision was around, and this court did not recognize it or follow it. In deciding the Courtney case, this court followed the Supreme Court of Arizona in its decision in Arizona versus Lateef, as well as New York's decision in Schenkel. So I don't believe trail is law. It does not reflect the jurisprudence of the state. Let me ask you this. If the law is the way you want it to be, if some criminal defense lawyer out here in the boondocks like down where I live and these small counties saw a former criminal defense attorney become state's attorney and then his former clients go out and get into other trouble, what are you going to do about that? Well, there's two issues there. One, and this ties into the issue with the change to Rural Professional Conduct 1.6. That is another part of this per se conflict. Regarding that issue, I think state's attorneys should approach the appropriate body to see about having the rule amended or changed, which they have not done since 2000. Aren't those two different issues? Whether a lawyer commits a violation of the code of conduct is a separate issue from whether or not he has a per se conflict of interest with somebody or another. Well, I don't believe so, Your Honor, because as I stated in my brief, if you cannot effectively represent your current client without violating your ethical duty to your previous client, I would argue that is in and of itself a per se conflict. But back to your point about these small counties. And this is an interesting issue. And Hersey addressed this issue. Does the mere fact that a prosecutor previously represented a defendant, that mere fact alone, should that automatically constitute a per se conflict? And I don't believe so. However, when you look at the holding of People v. Gerald, when you look at the law over the years and this adherence to these principles of the public having confidence in the court system and not having the appearance of conflicts, I think perhaps the analysis should be that when you have a prosecutor prosecuting a former client, it should give rise to a presumption of conflict. Well, what confidence would the prosecutor have to disclose to effectively represent the people in this case? Well, the fact of the prior DUI conviction. Well, that was public record. Judge, that brings us to this issue of 1.6. Under the old Rule 1.6, it was confined to secrets and confidences of the client. The new Rule 1.6, which was changed in 2010, is extremely broad. The standard there is all information regardless of its source. Cabinet 3 specifically says the confidentiality rule applies not only to matters communicated in confidence by the client, but also to all information relating to the representation regardless of its source. So that public record exception is abrogated. It no longer exists. It was there under the old Rule, and I can tell you, I've done presentations on this issue with different Bar Association functions, and a lot of lawyers are laboring under the misconception that confidences mean secrets under the old Rule. That's not the Rule. Well, again, I look at these issues of conflicts and violations of the Code of Professional Conduct as like a Venn diagram where they overlap. And while some violations of the Code of Conduct would create conflicts, per se conflicts of interest, not all of them would. And in this case, if he didn't, and the conflict of interest, if you've got a case that says if a lawyer is somehow violating a Code of Professional Conduct, that that creates a per se conflict of interest? I do not judge, but I think it follows. I do believe it follows. If you are, when it comes to representing two different people, if you are going to run afoul of the Rules of Professional Conduct, that is a per se conflict, would be my argument. Can we switch gears and talk about the timeliness issue? Sure. Yes, Judge. Well, the people, as you know, the people moved to strike the motion, or the appeal, on the basis that it was not timely. The court ruled on that decision, or ruled on that motion, saying no, we would not dismiss it. The people cited People v. Moralia. That's a Second District case. I cited People v. Serio, which came after Moralia. Also, I cited People v. Feldman, and those were the cases that the court relied on when it denied the state's motion to dismiss the appeal. The motion here, my motion, was filed within 30 days of the disposition of previous counsel's motion to reconsider sentence. The final ruling on all of the relief that I requested in the post-trial motion and the memorandum of law, which I submitted in connection with it, was not issued until January 16, 2015, due to hearings and that sort of thing. My motion was no more a successive or repetitive post-judgment motion than those motions filed in Serio and Feldman, which were filed after our follow-up ruling. Well, Serio is an appellate court case, right? Yes. And I think you argue that Serio overruled Moralia, and an appellate court can't overrule another appellate court. Well, it didn't follow that. Well, it didn't, right? Yeah, it didn't follow that. That would be right, yes. But at any rate, so, yeah, you have two sides to this conflict issue, one being all along the state talking about appearances of impropriety and the danger of sharing client confidences. Again, I urge the court to follow Hersey, the Hersey decision, which is very similar, which relied on the Oprasa decision, which has very similar facts as well, about a prosecutor previously represented the defendant, then using cases that he represented him on as sentencing enhancements, okay? Same case here, and I think you should adopt the reasoning and the logic of Hersey in this situation. And again, it goes back to that issue. Just recently, this court in WR reaffirmed its dedication to those principles about avoiding the appearance of any conflict and the public having confidence in the system. And we talked about Rule 1.6, that standard is completely different as of 2005, or as of 2010, than it was prior to that. Old standard was secret confidences, new standard is anything, anything about the case. And here, the assistant state's attorney, who stood in the shoes of Boyd, whose conflicts were imputed to her, related information about that previous representation and used it to secure a longer sentence. Well, and that's another point, too. Your client's former lawyer wasn't actually prosecuting the case, it was one of his assistants, right? That is correct, but as this court recognized in April v. Courtney, that does not matter when it comes to the actual state's attorney. Other assistants can be screened, their conflicts can be screened by using a quote, Chinese wall, I think that's what they called it in the case. That's okay. The state's attorney cannot do that. He is the boss, everyone serves at his pleasure, so his conflicts are imputed to every single one of his assistants. And that would be pursuant, again, to this court's decision in April v. Courtney. Was it the state's attorney's office that provided the driving abstract, or was it, I thought it was conducted by probation in the PSI? It was, Your Honor, and it was attached to the PSI, it was not included in the body. The abstract was attached to the PSI, but that disposition, the DUI disposition, was not included in the PSI. The state's attorney interjected that and said we need to amend the PSI to add that information. So you've got a direct disclosure of information about that case. Well, I think under the rule, the new rule, the state's attorney would have to stand there and not say a word. That's the only way they can comply with 1.6 as it stands. And that is not, that's where I get to that issue of that is not effective representation of your current client. So at the end of the day, let's suppose you go back and they bring in a special prosecutor. What's going to be different? Well, that's a good question, Judge, and it brings me to the next issue of the denial of my motion for discovery in this case. There could be all sorts of things different. I was asking for offers generated on other aggravated DUI cases. While we're looking at the issue of whether my client was treated dissimilarly than other similarly situated defendants, because he was previously represented by Mr. Boyd. The reasoning being that Mr. Boyd, in order to avoid being accused of playing favorites or showing favoritism to a former client, would have treated him more harshly than other defendants. And that, again, goes right back to Gerald, right back to 1914, Judge. That same issue. So without discovery, we were left to rely on a newspaper article. And as this Court has recognized, it's been recognized over and over in the case law, we can't prove this allegation of actual conflict because all of the evidence is in the possession of the prosecution. As to sentencing, Your Honor, I would argue that the Court abused its discretion. My client had no substantial criminal history, completed alcohol and anger management treatment, expressed remorse, had witnesses testifying to his family's support, and he set forth a cogent plan for sober living. None of that was... It was, and that's exactly what the trial judge said, Your Honor. And as far as treating him harshly, it was the trial judge who sentenced him, not the state's attorney. Well, it was based on the state's recommendation of eight years. And the trial judge did, and that's exactly what she said, and it was the first thing she said when she passed sentence. It was about that second DUI, and my position is it was related to the Court in violation of Rule 1.6, and that is a major problem. So, Your Honor, I'm asking that... The trial court's decision denying the motion to withdraw, plea of guilty, and other relief in the alternative. Thank you very much. Can I please report? Counsel, Laura DeMichael Bailon on behalf of the people. I'll start with the jurisdictional issue. This appeal should be dismissed for lack of appellate court jurisdiction. Because the Court's order was in final order, I raised it again in my brief. Also, the people could only have been permitted to respond to the reply by order of the Court, so that's why I've decided to fully brief it in the brief. The trial court lacks the authority to extend the time for appeal by hearing successive post-judgment motions. That's because Rule 606B, by its plain language, contemplates the filing of only one post-judgment motion. Here, Defendant filed a timely motion to reconsider, which was denied on October 18, 2013. The successive post-judgment motions did not extend the time for filing the Notice of Appeal. So, as February 16, 2015, Notice of Appeal was not timely. Serio and Feldman do not change this result. Serio actually supports it. It's not in conflict with Moriah in any way, because Moriah concerned the jurisdiction of the appellate court and how that was affected by successive post-trial motions. And Serio discussed only the jurisdiction of the trial court, whether the trial judge had jurisdiction to consider an issue. In that case, the trial judge said he didn't, because a Notice of Appeal had already been filed, but the appellate court stated that he did, because it was within 30 days of the sentencing. Serio actually then reaffirmed that 606B concerns appellate jurisdiction, stating that the reason successive post-judgment motions are barred isn't because they have anything to do with the trial court jurisdiction, but it is because they extend the time for filing a Notice of Appeal. And Serio also stated that jurisdiction vested in the appellate court, where the Notice of Appeal was filed within 30 days of the denial of the first post-judgment motion. It said the first one, rather than a successive one. Feldman is also distinguishable, because in Feldman, although the court finds a motion to reconsider, the denial of a motion to withdraw a guilty plea is an acceptable motion, giving the trial judge the opportunity to correct any error in the original ruling on the motion to withdraw a guilty plea. This case doesn't concern a motion to reconsider or a motion to withdraw a guilty plea. This case concerns the post-judgment motion was a motion to reconsider sentence. So an equivalent motion in this case would be a motion to reconsider, a motion to reconsider sentence, which is clearly a successive motion, as opposed to the motion to withdraw a guilty plea context. That would be the first chance to have something to say about the ruling on the motion to withdraw a guilty plea. Also, the second post-judgment motion raised only more issues in this case, so it didn't give the trial judge an opportunity to correct an error in the original post-judgment motion, as was the case in Feldman. Feldman, that's a second bite at the motion to withdraw the guilty plea is denied, and then the motion to reconsider is filed. Well, there's a big difference between 6S6B contemplates the filing of one post-judgment motion, and there's a big difference if it's just a motion to reconsider sentence versus if it's a motion to withdraw a guilty plea. If it's a motion to reconsider sentence, then a second motion just raises the same issues, where a motion to withdraw a guilty plea raises something that the judge hasn't seen before, so a single motion to reconsider the motion to withdraw a guilty plea is a second crack at the apple, whereas a successive motion in this case is he already had his chance in his first motion. If it was a motion to withdraw a guilty plea and the second motion was a motion to reconsider that, then the cases would be the same, but because it was a motion to reconsider sentence only, a motion to reconsider that would be. His first post-judgment motion was a motion to reconsider sentence, right? Yes. And that was denied? That was denied. And then he filed another motion that said basically, pretty please, would you please reconsider the sentence, and it was the same issue. The reasons he asked to reconsider were different in these sections. Well, but it still asked to reconsider. Yes, it still asked to reconsider, yes. And also included the motion to withdraw the guilty plea. Yes, but 606B contemplated the filing of only one such motion, and that was already done. The successive post-judgment motions extending the time for over a year in this case from the time of the sentencing or the time of the ruling on the one single post-judgment motion that's contemplated, those successive motions are not allowed by the rule. Because I'm trying to discern from your argument why the decision in Feldman is different than this because it goes to the ultimate, you know, the attack on the guilty plea itself, which here, you know, in Feldman they had the first motion to withdraw. The first post-judgment motion was denied, and they have no appeal within 30 days of that. The appeal comes within the 30 days of the motion to reconsider that denial, and because they both go to that issue of the withdrawal of the guilty plea. Well, the difference is in the successive nature of the motions. Because Feldman's was a motion to withdraw a guilty plea, the motion to reconsider that was the first shot. The judge had to reconsider that. But the judge already had a shot to reconsider the sentence in this case in the motion to reconsider sentence. So a motion to reconsider the motion to reconsider is successive, where the motion to reconsider the denial of the motion to withdraw a guilty plea isn't successive in the same way. So it's the difference in what was the first motion filed. That's the difference in this case because the Feldman scenario gives the trial judge the opportunity to correct a ruling on an original motion where, in this case, the opportunity to correct the ruling on the original motion was already completed in the denial of the motion to reconsider sentence. Should this court decide to rule on the merits of this case, the people who contend that the conviction and sentence should be affirmed. There was no per se conflict of interest in this case. State's attorney Boyd had represented a defendant in a different case with completely unrelated facts, totally different parties, 16 years earlier. That did not create a per se conflict. Under Illinois case law, when a defendant relies on per se, although that was an Arizona case, Illinois case law, and it's not just trial, there's also right, a prosecutor can prosecute a former client on a new offense if the new offense arises out of a completely separate set of facts and the parties are different. Trail was a 4th District 1990 case. It hasn't been overruled. Courtney doesn't overrule it because in that case that was the same party's same case. Defendant's attorney became the prosecutor in that same case during the pendency of that case. There's no separation from 16 years. There's no completely unrelated set of facts or different parties. In Trail, where the defendant's former attorney prosecuted him personally, not just an assistant doing it, but personally showed up and prosecuted him, it was two years after the case and the charges were similar, but because the parties were different, the facts relating to the case were different, that two-year separation led the court to find that there was no per se conflict of interest. Also in Right, there was no per se conflict of interest or actual conflict of interest where the prosecutor had represented the defendant previously in a different case two to three years earlier. Moreover, in the other state cases defendant discusses, they were actually sentence enhancements that needed to be alleged and approved, and the prosecutor's involvement was much more personal and closer in time. I believe in one of them it was something under 60 months where he had represented the defendant and then later was the prosecutor. The prosecutor was present as prosecutor while the search warrant was being executed at defendant's house and spoke with him at that time. He also spoke with him in court later, where here we have the 16-year separation and the state's attorney did not ever actually personally appear in court on this case. And although it was mentioned at sentencing, that was only because it was in PSI from probation and it wasn't an actual, it didn't need to be alleged as an element of the offense or as an element that needed to be proven to enhance the sentence to a certain range. But my understanding is that what was on the PSI was just that he didn't have a, or that he'd lost his license or it had been revoked previously, but the nature of the revocation was not clear from the abstract. Is that clear to you? Is that why the state offered the information? I believe, so the abstract was attached to the PSI, which I would consider, it was prepared by probation, it's in there. And I don't know if maybe, I haven't seen the record in a long time, so I believe maybe when it said criminal history it didn't discuss it. I'm not really sure. I'm not really sure why this clarification was used as necessary when it was in the abstract and the PSI. But I would note that at the time of the plea, defendant's own counsel stated that there had been a prior DUI. So even before the PSI, defendant's own counsel is saying there is a prior DUI. It's no secret that there's a prior DUI. The DUI is on the abstract. The abstract was in the PSI that had been requested by defendant, prepared by probation. Boyd didn't reveal anything. For Rule 1.6 to be violated, even under the new rule, there has to be an attorney revealing some information relating to the representation of a client. And in this case, what did Boyd reveal relating to his representation of the defendant? I think that's what Mr. Adams said when he said you don't remember from the record. I think what he's alleging is that the PSI itself didn't contain information about the suspension or revocation resulting from a DUI and that the state affirmatively said in objective that it was. Now you're saying that you don't remember that circumstance. The abstract is part of the PSI. Either way, whether it's in there earlier or whether it's in there later, the abstract is part of the PSI. And because the abstract is part of the PSI, it's in the PSI. But I think what I'm saying to you is that the PSI, the abstract that was attached to it, didn't indicate the reason that his license was either suspended or revoked. The abstract reveals that it was a DUI. And it's actually defendant's own counsel says this was a DUI in this year. In discussing the abstract, defendant's counsel is the one that clarifies this is the year, this is the DUI, this is what this means. So there's really no disagreement. There's no objection to the abstract being included in the PSI. And just because Boyd had been the defense counsel 16 years earlier on that DUI, shouldn't serve to make this public record all of a sudden something that can't be used. Whether the state's attorney said this is in the abstract or not, it was in fact in the abstract. There's nothing about the representation to be revealed. So the fact that a conviction existed, how is that an information relating to the representation? All it is is that it happened. It doesn't say anything about, it's nothing anyone learned just because Boyd had been 16 years earlier the attorney on that case. Moving on to the discovery issue. Defendant waived the issue because he didn't raise it. He never made a motion to disqualify Boyd prior to the successive post-judgment motion. His discovery request was just an attempt to circumvent the waiver rule, but it's just a fishing expedition because as Justice Schmidt asked earlier, what confidence existed to be used that could have prejudiced him? He said the fact of prior conviction, but that's just a public record. That's going to be revealed in any case regardless of who's prosecuting the case. If he seeks information that wouldn't even be relevant to show a conflict, because what would these other offers have to do with the offer in this case? The cases can't be so easily compared. Maybe Boyd even represented those defendants prior cases too to know the strength of the evidence in each case, what everyone thought about that, what the wishes of the families were, the impact on the victims. We couldn't tell that just from seeing what was offered. Defendant can't show he was treated more harshly in this case because the prosecution wasn't obligated to offer a plea at all, but they did. The plea dismissed a charge which was a class four extendable charge of fleeing the scene of an accident causing injury. That would have been mandatorily consecutive to any sentence on this case. The sentence was capped at eight years when it would have otherwise been 12. The defendant with the advice of counsel apparently viewed this plea as favorable because he decided to accept it, and the trial judge is the one that imposed the sentence, not Boyd. And the trial judge even stated that she would have imposed 10 years if there wasn't this cap. So he received a sentence two years under what would have been without the cap, plus this mandatory consecutive charge having been dismissed. Regarding the sentencing issue, it's presumed the trial judge considered evidence in mitigation. Here the trial judge stated that she considered evidence in mitigation. There's no indication she didn't. The prior DUI was in the PSI, which had been well over the abstract, which was attached to the PSI, which was requested by defendant. It wasn't objected to by defendant. It was prepared for probation. It could be considered as part of the DUI, and also defense counsel stated that defendant had prior DUI. So the effect was something that could be considered, and the trial judge acted within her discretion in sentencing the defendant. Are there any further questions? Thank you. Mr. Anna for rebuttal. Regarding exactly what the state's attorney relayed or what she relayed about the prior case, she said this was the defendant's second DUI, that's record 15, that the defendant had prior court supervision for DUI in Will County, and this was his second DUI, that's found at the record 3032, and that he should be sentenced to eight years in the Illinois Department of Corrections because this was his second DUI. That's found at the record 78. What's the abstract show? It's been a lot of years since I've looked at abstracts, but it seems impossible for me to believe that there's not a reference to that DUI in an SOS abstract. And I don't recall if it was the old numeric kind or if it's the printed one that says what the offense is. But it was attached, it was there. And with reference to the DUI conviction? Yes. It was a prior DUI supervision. And I'm just saying, under your conflict theory, let's suppose that the state's attorney had been a divorce lawyer and maybe represented a client in a divorce 15 years earlier, and during the course of representing this fellow in a divorce found out that he had been convicted of a DUI. And 15 years later, he's the state's attorney, he has knowledge, the same thing? Well, I'm glad you brought this up because we started talking about this question last time and I wanted to get back to it. While there, he would be in a real pickle, ethically, in your scenario. Why? Well, he can't, it's his former client, that's his specific confidence, presumably, under your scenario. He learned from the guy and he can't disclose that then because he's under this new rule. He can't disclose it. I guess unless you could say, you could argue that it falls in an exception that is disclosing it to keep the defendant from perpetuating a fraud under one of the specific exceptions. If you could shoehorn it in there somehow. Well, but as we said, there was already an abstract there, that it was there, and I mean, do you think there ought to be any level of common sense applied to this? Yes, I do. I do. And here's what I would, well, actually, the rule as to the RPC 1.6, are you referring to that, Justice? Yes. Well, in your scenario, the fact that he knows something that is a matter of public record about this defendant means that he can't. Not him, his office can't prosecute that defendant. I think the rule as it stands, Your Honor, under that rule, yes. Does that make any sense to you? Well, there are a lot of laws and a lot of rules that don't make a bit of sense to me in this state, Judge, or Justice. Judges, we're judges, and that's fine. One other thing I would ask is the discovery issue. Have you ever seen one case where the appellate court has reversed a trial court for not allowing discovery on the issue, on a motion to reconsider sentence, saying, let's see what you did with all other people charged with this crime? Well, this is different because we're getting at, was my, pardon me? It's a no. Oh, yes, it's a no. Okay. Because it's to that other issue. So would be the first, can you imagine opening up that Pandora's box and now on every motion to reconsider, you're going to have a motion for discovery saying, well, how, I want to know about every other person sentenced in this county for a similar crime for however long a period of time, and let's compare. I understand. You cannot engage in comparative sentencing. That is correct. It goes to whether evidence of, whether my client was treated differently than other similarly situated defendants because it's his prior lawyer prosecuting him. We had a trial judge who said, if it weren't for this agreement, I'd give you a 10. Well, again, that would be, I think you have to look at what. I'm just trying to find some prejudice in your client somewhere along the road and try as I may, I can't do it. So I'm giving you a chance to sort it out. I believe, Judge, that the analysis should be, as you look at, if it's a former client being prosecuted by his former attorney, there should be a presumption of conflict. The burden should be on the state to prove that there is not. And all the case law, when they examine these issues, they look at what level of involvement it is. If the lawyer represented the person on a routine traffic ticket, appeared one time in court with the defendant not present, had very maybe stepped up for another lawyer one time on the case, that doesn't rise to that level. But in this case, we have his sole counsel from the previous DUI who represented him, who put the plea through, then using that plea in aggravation at a subsequent case. And regarding this issue of the elements of sentencing enhancement, the courts in Hearson specifically stated that they did not believe that whether it's an element of defense or not matters. Again, they go back to that same issue of appearances of impropriety and danger of exposing client confidences. And that goes back to 1914. In this state, this court looked at it, and Courtney. And so just as this court followed Arizona and Courtney, I'm suggesting you do it again here in this case. Any other questions? Thank you very much. It was a pleasure. Thank you. Thank you, Mr. Adams. And Ms. DeMichel, file on? Yes. Is that right this time? Thank you both for your arguments here today. This matter will be taken under advisement. As we stated, Justice McLean will participate fully in the decision. And a written decision will be issued to you as soon as possible.